Thank you. We are recording. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the third case on the docket this morning is 2-19-0495, Enry, the marriage of Colleen Keegan, Petitioner-Appellant, and John C. Papin, Respondent-Appellee. Arguing for the Mr. Randy K. Johnson. And let the record reflect that the Marshall has made several attempts at contacting Appellant's counsel to find out if or why he hasn't appeared or has not joined the court. Put him on the screen, please. Now that's Councillor McCullough. Can you please turn on your camera? Oh, so he's listed at 12607. There he is. Okay. Mr. McCullough, this case was scheduled for 1030. Is there some excuse or rationale? 1130. 1130. Yes. I'm sorry, I didn't hear you. Did you say you thought it was at 1130? Yes, I did. It was at 1130. You didn't connect until 1157. I found the instructions. Uh-huh. Okay, shall we just proceed then? Yes, that's fine. But we do have another case pending after this, and so we need to make sure we keep to general time. Okay. We are recording, are we not? Yes, sir, we are. Okay. Mr. McCullough, you may proceed. You have 15 minutes, sir. Thank you. May it please the court, my name is Edwin McCullough, and I represent Dr. Colleen Keehan. She is not present today for this hearing. And the issue that I want to discuss first is her medical condition. And it goes to the question of whether or not she could work as a dermatologist. She's a licensed physician to no life, and Mr. Papin is a personal injury lawyer. And the court, this motion has to do with the deposition, her deposition, which she never gave. Mr. Papin originally scheduled the deposition for November 18th, 2015. She was unable to attend this deposition because she was visiting her brother who was very ill in the hospital. The court then ordered that she attend the deposition on December 21st, 2015. The week before the 21st, she had severe abdominal pain and underwent an MRI on December 16th. She called her attorney saying she could not attend the deposition on December 21st. That was related to the attorneys for Mr. Papin. Now, we've been, she took a, took a dorsal holiday out in Chicago. The parties never rescheduled their deposition. And Judge Sotomayor, on the motion of Mr. Papin to bar her testimony, which he filed in the end of 2016, the court entered an order barring her from testifying and instructing her previous evidence on her medical condition. Medical condition had to do with her allegation of disability. And she was not able to do so in the courtroom. But he found no disability in the letter of ruling of January 20th, 21st, 2019, excuse me. In some ruling, the judge said that he had just drawn a large monkey when she was in the case. Indeed, it did. I respectfully request that this court hold that barring the order was too harsh and to reverse the remand of the case to the circuit court. We stated three decisions holding that when there is no willful noncompliance with the order, that the imposition of the sanction of dismissal was there. In this hearing on January 3rd, Judge Chavez found that the refusal or failure to attend the resizing of the case, the General Motors case, to the point that the corrections were not a willful violation of the Charter Courts' authority and the drastic step of dismissal was there. Here barring the medical evidence, we stand up to dismissal. Of course, there was a drastic sanction for dismissal should be employed only after other enforcing process. Counsel, Mr. McCullough, you mentioned that the discovery violations were not willful and the trial court made a finding as to that, at least as to one aspect of the proceedings. But how is it that if there is virtually no discovery, how is the other side supposed to prepare an adequate defense to the claim that she has dysfunction and the mental dysfunction until there is discovery, one cannot determine the nature or the extent or the disability that is involved such that it would affect her ability to sustain herself and therefore have any direct or indirect effect on maintenance? Just ask Terry. Well, the maintenance was based on the respective incomes of the parties. I don't believe there's a better opinion of that generally since 2019. We contend that the court erred in the denial of maintenance of Dr. Keegan. The answer is I don't think that the parties was well informed of her dysfunction. Her dysfunction was not mental. It was physical. She had abdominal problems. She had her gallbladder removed. She had a laparoscopy performed. And none of the evidence went into the decision that led to the denial of maintenance. There's a question first of the framing of the issues in this case. The defendant, Keegan, repeatedly says that we did not provide the record of the court of proceedings during its motions. The motions were not hearings where evidence was taken and the matter of the law. We cited three cases that hold that the record of the proceedings is not required. I cited Gallo v. Genske on page 24 of my brief. I set out the reasons on the decision on page 24 and 25 of my brief. It does not discuss this case at all. It doesn't address it. I submit that his not addressing these decisions is a concession that the court is seeking to close. I also argued that in the general rules, in this case, the court held that the drastic remedy of dismissal was error. We have the same situation here. We have a dismissal based on just one order. I asked the court to reverse this dismissal. see she uh the uh mr favment label pressuring cited the his amigos saying saying that uh the uh record on appeal was insufficient he went down the uh opinion currently went down and got to page 319 and uh she warned that the uh question in this case was an interpretation of a contract matter of law inferior to present that uh hearing was not necessary for the termination on he also claims that uh this that dr keegan filed no response to john's motion to bar the records citing him on page 14 of his brief she's filed a response on december 29 who's also seen this i also argued that uh judge sargos prohibited dr keegan from discussing her testimony with her my position on that is that the prohibition of a party not being able to discuss the testimony in the future or past with her lawyer is a denial of the counsel i also point out that there is no showing that the uh mr papen argues that there was no showing of prejudice the fact that she wasn't able to present her she never has to prove how would she prove her genius what she has to rely on hypothetical facts before they turn inside communications i can't uh see people people versus oh i was cited by both parties and uh so much for the logic of uh how it applies here both parties cited the uh hot section versus port scene cases and the uh supreme court in that case who stated that a civil lawyer has the right to retain counsel based on your process of law the defendant doesn't quarrel with their position lastly what's the maintenance issue was decided wrongly because the court used the court you see the last year of mr take insurance and compare it with our tally of thousand dollars a year when you add up all the the uh runs were presented in a period of five years from 2014 to 2018 they totaled over two and a half million dollars the determination of the court made was not taken into account these earnings or its potential as a personal issue lawyer to see very more i have no further questions i have no questions done thank you i have no questions thank you sir you'll be given an opportunity to make rebuttal after uh mr johnson has given his presentation okay thank you mr johnson you may proceed your honors respectfully i will stand on the uh issues concerning the uh the claim that the uh standards of review were never properly tied into the respective issues i think that we've made the point in our briefing we will stand on them secondly your honors respectfully seems to be an appeal of systematic omission what i mean by that is first of all the appellant placed her medical condition into um into issue with her answer to interrogatory number 27 that's to be found at common law record page 947 and the answer there was i have and i quote i have neurological problems which inhibit my ability to in june of 2003 the date on which the condition will end is unknown i'm moving forward your honors i just i can't imagine why there is no mention of the hearing that was held in front of judge douglas on june 15 2016 your honors that is at volume two beginning its uh c 1361 in that in that hearing judge douglas was very explicit in warned appellant's counsel at least two or three times about failure to produce documents um one time one time the court said and i quote and this is at page um beginning of page c 1371 the court says well i mean if you don't waive the privilege i guess then when we get to to try it should have been trial i'm going to say you don't get to put on the information if you haven't released records about it and they can't get the records then you can't put the issue on then counsel for for the appellant said at 1372 well yeah they might they have been raised the issue of of of uh the the question of uh the privilege and obviously the court the court knew that you know you you can't raise privilege and at the same time you raise your your your medical condition and not turn over the records so i think what it is is if you raise privilege uh then you can't present evidence correct at all okay correct and the beginning of this the beginning of this um the importance of this june 15th hearing is critical but it's never mentioned anywhere in the appellant's brief or the appellant's reply brief so i mean these these concepts just didn't arise beginning on september 6th of 2016 they didn't arise in january of 2017 when when the evidence was stricken it didn't arise at the post-trial motion in may later on in may um so these are rules they have it with they weren't complied with um and in in fact the court told the council at c 1392 to tender affidavits of completeness and warned that you will run on your own peril on that because if you haven't given them if if something you haven't given them comes up at trial i may bar testimony or do other things so you run on your own peril on that but it was never updated um i don't recall anything about invited error did you argue invited error at all no essentially you ran away did is i i just i argued forfeiture um because i i didn't see any basis here as far as the trial judge's decisions given the beginnings of these of these warnings on june 15th i saw absolutely no abuse of discretion and no error um in in the trial court's ultimate decisions um mr johnson what about the situation where uh dr keegan says well i did i was now available on the december 21st date for purposes of the deposition but it was too late what obligation does she have or does council have to to get a new date to follow that court order um because and i and i believe that that um i believe judge douglas mentioned this in the court's discussion because the order originally required dr keegan to sit for the deposition dr keegan did not sit for the deposition um judge douglas refused to shift the burden to reschedule that to my client and um and and said quite clearly that um the the burden to reschedule that deposition remained with dr keegan and her counsel in fact and i quote it at record page 698 where the court said dr keegan's theory to appear for her deposition on the 21st of december 2015 was not willful the argument by dr keegan or counsel that it was incumbent upon the respondent to then follow up and continually ask for additional dates is somewhat suspect they said once deposition has been set and ordered by the court if a party for whatever reason has to cancel it is incumbent upon them to seek a time when the deposition should be rescheduled when they are canceling to say well maybe if they don't ask we will get away with not having to give the deposition it all flies in the face of the discovery rules court had ordered this deposition it was incumbent upon dr keegan to find a time when the deposition could be done and if it was not done at the time when the court ordered so and and i think i think judge the trial judge here made the correct ruling is this a is this making was judge douglas's analysis sort of a new law or did he have case law to support it he had case law to support it the diable decision from this court which in fact in fact his his his rendition of the diable decision which is at 404 ill app third 479 2010 decision um he was presented with that case and it was it was uh it was interesting that in in this appeal um counsel or the appellate has cited the uh i think it was a schismansky case but what happened in in diable was the trial court or judge douglas um excuse me schumanowski to general motors case judge douglas when he reviewed diable he he was aware that these six factors listed by the court and schumanowski were quoted verbatim and followed by this court in diable so oh yes he the court had the authority of diable he was well aware of these factors that was were promulgated by schumanowski and he followed them and he found that quote therefore surprise is something that the court has considered and finds to be substantial prejudicial effect of the preferred testimony is substantial as well as well and that's at record page 699 so yes the court had had had warned of the situation back on june 15th had this this authority in front of him he made the correct ruling there's no abuse of discretion here under these types of circumstances and as far as the the the argument that um somehow that that the appellant's lawyer was or the appellant's talent was deprived of due process uh we stand on the stocker um darn out the stocker decision which illinois decision which is um and the and the commonwealth edison decision which which says that that when there's no not even an objection that there's there's no error here and here there was no no objection latch i i'm just at a loss to to understand how that there's any error to be to be uh determined and lastly as to the to the um i don't believe respectfully by any stretch of the imagination that there's been any showing of an abuse of discretion by this by the trial court um i i respectfully ask under all the circumstances particularly i mean this is a the record in this case is in excess of 12 000 pages now the original argument concerning maintenance was about a page and three quarters long had had record citations that the trial court had had stricken from from from the record uh respectfully your honors i i have to conclude and i asked the court also to conclude first of all that the decision of the trial court should be affirmed in all respects and i asked the court under these rather unique circumstances to find that this appeal is frivolous because my client should not have to pay to defend something like this under these circumstances and on that on that note your honor um i i have nothing further unless there are any questions of the court i have no questions i have none i haven't either thank you um mr mccullough you have five minutes for rebuttal okay uh they will uh involved a willful violation by their wife we don't have this situation here we have the the frivolousness that's asserted here is based on the failure to provide a record for the various parts of this trial as i pointed out in my opening there was no requirement for a record of what was said because the questions presented were a question of law and uh christian paper doesn't have an argument against that uh i with that i will address please uh reverse the judgment in this case and remand it for a proceeding for the court thank you you no questions nothing additional thank you thank you i have no further questions uh thank you sir thank you uh mr clerk pardon me mr marshall will you please close out the case yes your honor